UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

v.

DAVID FOLTZ,

                Defendant.

REPORT AND
RECOMMENDATION
16-MJ-511

---

## Factual Background

By criminal complaint dated January 22, 2016, David Foltz (hereinafter "Foltz" or "the defendant") was charged with a violation of 18 U.S.C. § 2113(a). The complaint alleges that Foltz committed several bank robberies in the summer and fall of 2016. See Docket # 1. The government moved for detention and the Court scheduled a detention hearing for January 27, 2016. The detention hearing never occurred because on January 27, 2016, the defendant was found unconscious in his cell at the Monroe County Jail after attempting to hang himself using a bedsheet. Records are unclear as to how long he was hanging, but it is clear that he was given CPR by emergency responders. At the time he was discovered in his cell, his initial Glasgow Coma Score was three.

Foltz was taken by ambulance to Strong Memorial Hospital where he was admitted to the intensive care unit and diagnosed with an

1

anoxic brain injury. Hospital records confirm that Foltz's brain injury caused a myriad of significant impairments including "cognitive-linguistic impairments in the areas of orientation, memory, reasoning, problem solving, and executive function." See Gov't Ex. 1, at 5. Hospital records from February 17, 2016 indicate that the defendant "would benefit from 24 hr. supervision upon discharge and . . . from ongoing skilled services for his cognitive-linguistic impairment at the next discharge setting." Id.

On February 26, 2016, defense counsel requested that his client be evaluated for competency to stand trial pursuant to 18 U.S.C. § 4241(a). See Docket # 7. The Court granted this request the same day. See Docket # 6. It appears that Foltz was discharged from the hospital in mid-March 2016, and admitted on April 12, 2016, to the Mental Health Unit at the Federal Medical Facility in Butner, North Carolina (hereinafter "FMC-Butner") to be evaluated for competency to stand trial. On April 25, 2016, this Court received correspondence from FMC-Butner requesting a thirty-day extension to complete defendant's evaluation. The Court granted the extension and scheduled the matter for a status conference. See Docket # 9.

On July 6, 2016, the Court received a forensic mental health evaluation from FMC-Butner. The evaluation was dated June 23,

2016, and was co-signed by Forensic Psychologist Dr. Tanya Cunic and Forensic Psychiatrist Dr. Byron Herbel.[1] The evaluation concluded that the defendant was competent to stand trial. A status conference to address the competency report was scheduled for July 25, 2016, but was postponed because the defendant had not yet been transported to the Western District of New York from FMC-Butner. Docket # 10.

On August 11, 2016, this Court held a status conference. After discussing the results of the competency evaluation, defense counsel informed the Court that the defense disagreed with the opinions and findings expressed in the evaluation, and requested an adjournment of the competency hearing in order to have the defendant examined, tested and evaluated for competency by defense mental health experts. The Court granted the defense request. Delays in resolving the competency issue since August 11, 2016 were due solely to the defense's requests for additional time in order to allow Foltz to meet with mental health experts retained by the Federal Public Defender and to undergo testing, both while incarcerated and at outside medical facilities. All defense requests were granted by the Court. See Docket ## 13, 14, 18, 20, 23, 24, 26, 32.

---

[1] Foltz was seen individually by Dr. Cunic. Dr. Herbel "provided psychiatric consultation." See Gov't Ex. 1, at 1.

A competency hearing commenced on January 23, 2018. Dr. Cunic testified on the results of her evaluation of Foltz and her opinion that defendant was competent to stand trial. According to Dr. Cunic, Foltz was malingering or exaggerating his cognitive deficits, and his mental condition "[did] not reflect the level of severity the defendant implied." See Gov't Ex. 1, at 14; see also Docket # 35. Dr. Cunic opined that Foltz had the "ability to cooperate with legal counsel and develop a defense strategy, and the ability to maintain decorum in the courtroom." See Gov't Ex. 1, at 14.

The defense called Dr. Rory Houghtalen to testify. Dr. Houghtalen is a clinical professor of psychiatry at the University of Rochester, who also maintains a private practice of general and forensic psychiatry. Dr. Houghtalen is Board Certified in General Psychiatry and Forensic Psychiatry. He testified that he was unable to offer an opinion as to whether Foltz was competent or was malingering his cognitive deficits without additional neuropsychological examination and testing, such as an enhanced MRI that was especially sensitive to detecting anoxic injuries. Unlike Dr. Cunic, Dr. Houghtalen expressed doubts about whether Foltz was feigning his inability to retain information and assist counsel in making decisions about his case. Dr. Houghtalen also testified that he did not believe he had been provided with an

4

important piece of medical evidence – the entire file created by Strong Memorial Hospital as a result of Foltz's January 2016 admission after his suicide attempt. The defense requested additional time to obtain the records and allow the additional testing recommended by Dr. Houghtalen. The government joined in the defense's request, and the Court granted the joint application and signed orders directing the production of Foltz's medical file (Docket # 34) and the administration of the enhanced MRI (Docket # 36).

After granting additional adjournments to complete the testing and forensic evaluation of the defendant (Docket ## 38, 41), the Court reconvened the competency hearing on May 4, 2018. On May 3, 2018, defense counsel provided the Court and government counsel with copies of competency evaluations completed by Dr. Houghtalen (Def. Ex. A) and Dr. Jared Fisher (Def. Ex. B).

On May 4, 2018, the defense called Dr. Houghtalen back to the stand to continue his testimony. Dr. Houghtalen testified that after further testing and evaluation of the defendant he was now able to reach an opinion that the defendant was not exaggerating or feigning his cognitive deficits, and was not malingering. Dr. Houghtalen testified that the defendant's medical records revealed that since his teenage years Foltz has suffered from significant mental illnesses that necessitated a mental hygiene arrest and

multiple admissions for psychiatric treatment. The "working diagnosis" at that time was schizoaffective disorder leading to "persistent psychiatric and functional impairments prior to his arrest." See Def. Ex. A, at 8. Dr. Houghtalen also found that Foltz's hanging attempt five days after his arrest on the instant bank robbery charges deprived his brain of oxygen resulting "in a significant, anoxic brain injury." Id. Although recommended, Foltz has never received brain injury rehabilitation services. These brain injuries, when combined with his preexisting vulnerability related to his psychiatric disorders, "may have compounded the effect of the anoxic injury." Id. Based on Dr. Houghtalen's review of the defendant's entire medical record and testing, as well as his interactions with the defendant, Dr. Houghtalen concluded that Foltz "does not appear to be able to form and retain a factual understanding of his case, the evidence against him and the available legal options because he does not seem to register memory effectively and so does not retain it sufficiently." Id. at 9. According to Dr. Houghtalen, these deficits would effectively prevent the defendant from meaningful interaction with his lawyer and from assisting his lawyer in defending him at trial. Dr. Houghtalen noted that if these deficits are caused primarily by an underlying psychiatric illness, there is "a faint hope of restoration" of competency. If

the deficits are due to the brain injury he suffered in jail, Dr. Houghtalen opined that "there is no realistic hope of restoration." Id. at 9-10.

Dr. Jared Fisher also testified at the competency hearing. Dr. Fisher, a neuropsychologist who is President of Rochester Brain Injury Consultants, specializes in the evaluation of brain and head injuries. Dr. Fisher was retained by the defense to evaluate and test Foltz on the issue of malingering. His assessment, as set forth in both his report and his testimony, was that Foltz "was in all likelihood already neurologically compromised" from preexisting events when he hung himself in January 2016, and this "further magnified the adverse neurologic and neurobehavioral consequences" of Foltz's hypoxic brain injury. See Def. Ex. B, at 22. As to evidence of malingering, Dr. Fisher testified that the tests he administered do not suggest active malingering or deliberate feigning of cognitive deficits. Instead, Dr. Fisher's assessment of malingering support the conclusion that Foltz's mental status and cognitive acuity are the results of neurologic injury and underlying psychiatric disorders for which Foltz is in need of treatment. According to Dr. Fisher, it would be nearly impossible for someone to feign the cognitive deficits and disturbing behaviors (openly masturbating without regard to who is present; defecating and urinating in his clothes, bed and cell,

7

and then refusing to change from soiled clothing; lying in bed all day; refusing to socialize or interact with others) for months without being caught or observed in "normal" behavior. Dr. Fisher concluded that Foltz's "cognitive, psychological, and resulting behavioral and motivational deficits preclude him from working" with his lawyer and the Court if a trial is convened, and that the defendant's condition continues to deteriorate. Id. at 24.

## Discussion

Foltz is competent to stand trial if he has (1) a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and (2) a rational as well as factual understanding of the proceedings against him." United States v. Nichols, 56 F.3d 403, 410 (2d Cir. 1995) (internal quotations and citations omitted). Mental illness is not the legal equivalent of incompetency. Rather, the mental illness must deprive the defendant from being able to either (1) consult with counsel with a reasonable degree of rational understanding or (2) demonstrate factual and rational understanding of the proceedings against him. Id. at 412. Under 18 U.S.C. § 4241(d), the hearing court must find "by a preponderance of the evidence" that the defendant is not competent to stand trial. The burden to prove a lack of competence is on the defendant. See Cooper v. Oklahoma, 517 U.S.

348, 362 (1996) (upholding Oklahoma statute that presumed a defendant competent unless he rebutted the presumption, and commenting that under 18 U.S.C. § 4241, "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence.").

Based on the foregoing standards, this Court concludes that Foltz is presently incompetent to stand trial. For purposes of this publicly filed Report and Recommendation, I see no need to repeat Foltz's psychiatric history or the details of his current mental status. Suffice it to say that after consideration of all the evidence presented at the competency hearing, as well as my own observations of the defendant during the numerous times he has been in my courtroom, I find that the defendant's current cognitive, behavioral and psychiatric conditions preclude him from effectively interacting with his lawyer and properly assisting in his defense. I found Dr. Houghtalen's and Dr. Fisher's evaluation reports and hearing testimony to be thorough and complete, and I incorporate their findings and conclusions into this Report and Recommendation. Despite their differing conclusions, there is considerable overlap between their findings and conclusions and those of Dr. Cunic. However, I find the evaluations and opinions of Dr. Fisher and Dr. Houghtalen to be supported with detailed findings and objective evidence and, thus, particularly

persuasive. In sum, it is my Report and Recommendation[1] that the defendant has demonstrated by a preponderance of the evidence that he is currently not competent to stand trial.

Should the district court adopt this Report and Recommendation, I further find that pursuant to 18 U.S.C. § 4241(d) the defendant should, <u>as soon as possible</u>, be "hospitalize[d] . . . for treatment in a suitable facility" to determine whether there is "a substantial probability that in the foreseeable future he will attain the capacity . . . to go forward." To assist in his treatment, I further direct the parties to immediately provide to the designated medical facility (1) a copy of Dr. Houghtalen's and Dr. Fisher's evaluation of the defendant, and (2) a complete copy

---

[1] The instant competency determination is being made before indictment and hence prior to the issuance of a referral order pursuant to 28 U.S.C. § 636. Although neither the government counsel nor defense counsel questioned this Court's authority to determine competency to stand trial, my own research indicated that the authority of a magistrate judge to issue competency decisions with or without a referral order has not been addressed by the Second Circuit. At least one court has held that implicit in Rules 5 and 5.1 of the Federal Rules of Criminal Procedure is the authority of a magistrate judge to issue pre-indictment decisions on questions of competency of a criminal defendant. "Since a Magistrate Judge is generally the only judicial officer who exercises jurisdiction over a criminal defendant between the time of arrest and the time of indictment, the contention that such a [competency] ruling is beyond the jurisdiction of a Magistrate Judge appears contrary to the intent of the statute." <u>United States v. Hemmings</u>, No. 91-313M DAR, 1991 WL 79586, at *4-6 (D.D.C. May 2, 1991); <u>but see United States v. Weissberger</u>, 951 F.2d 392, 398 (D.C. Cir. 1991)(Magistrate Judge without authority to order competency examination without a referral order from a district judge); <u>United States v. Ecker</u>, 923 F.2d 7, 9 (1st Cir. 1991)(commitment order under 18 U.S.C. § 4241 must be reviewed by district judge in order for it to be final order appealable to the court of appeals). In light of the lack of guidance from the Second Circuit and in an abundance of caution, this Court's findings are set forth in a Report and Recommendation and not a Decision and Order.

of the Strong Memorial Hospital treatment records of the defendant.

**SO ORDERED.**

_____
JONATHAN W. FELDMAN
UNITED STATES MAGISTRATE JUDGE

Dated: May 9, 2018
       Rochester, New York

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[1]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: May 9, 2018
Rochester, New York

---

[1] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. United States v. Andress, 943 F.2d 622 (6th Cir. 1991), cert. denied, 502 U.S. 1103 (1992); United States v. Long, 900 F.2d 1270 (8th Cir. 1990).